**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Jasmine Brown, *Plaintiff*, v. Select One, Inc., et al. *Defendants*. | No. 24 CV 903 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jasmine Brown, individually and on behalf of all other similarly situated delivery drivers, sued Select One, Inc., and its manager, Daniel Georgievski (collectively, "Defendants"). Brown alleges Defendants misclassify drivers like him as independent contractors as opposed to employees, and through that misclassification, Defendants engage in a series of unlawful payment practices in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), the Fair Labor Standards Act ("FLSA"), and the common law tort of unjust enrichment. Before the Court are Defendants' motion to dismiss Brown's complaint on the merits, and Brown's motion for conditional certification of his FLSA collective. For the reasons stated herein, the Court denies Defendants' motion and grants Brown's.

**I.    Background**

The Court takes Plaintiffs' well-pleaded factual allegations as true for purposes of ruling on the motion to dismiss. *See Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). Jasmine Brown, a North Carolina resident, provided trucking services for Select One—a "customer-focused trucking company"—from roughly

1

January 2021 until May 2023. [Dkt. 1 ¶¶ 4, 6.] Defendant Georgievski is a "Manager" of Select One who "possesses and exercises the authority to make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them." [*Id.* ¶ 7.]

During his tenure, Brown was obligated to sign contracts with Select One which classified him as an independent contractor. Notwithstanding this status, Brown alleges Select One had considerable oversight over the execution of his duties. For example, Brown was required to lease a truck and trailer from Select One, both of which had Select One insignia. Brown worked up to 70 hours per week with Select One, and did not have any other employment. Brown had to routinely contact Select One's dispatchers to receive instructions on when loads should be picked up, and where they should be delivered. Brown also had to abide by various Select One policies, report to Select One staff, and use their equipment. If equipment needed to be repaired, Brown had to use Select One's maintenance staff. Select One did not permit Brown or other drivers to have their own customers; all business had to come from Select One. Brown had to inform Select One in advance if he wanted to take time off. Brown alleges that the collective amount of control Select One has over him and other drivers renders them employees. [*Id.* ¶¶ 14-18, 24-32.]

As for payment, Brown received a "percentage-of-the-load basis" for each delivery. But Select One also made deductions from Brown's pay, including for "insurance, fuel, truck and trailer rental, escrow, maintenance and repairs, highway

2

Case: 1:24-cv-00903 Document #: 27 Filed: 07/12/24 Page 3 of 17 PageID #:190

taxes, IFTA payments, and GPS." These deductions often totaled several thousand dollars per week. Nor was Brown reimbursed for out-of-pocket expenses he incurred while driving, such as cell phone payments or maintenance. With the deductions, Brown alleges he often made less than minimum wage while driving for Select One in violation of the FLSA. Indeed, for multiple "pay" periods, Brown's statement indicated he owed Select One money. [*Id.* ¶¶ 19-23.]

Based on his mischaracterized employment status and unlawful wage deductions, Brown filed this lawsuit against Select One on behalf of himself and all other drivers who were subject to these policies. Brown seeks to represent an IWPCA class of individuals "who have either been classified as independent contractors or have not been paid or treated as employees during the relevant statutory period." Brown also wants to certify a collective under the FLSA for those "who worked as delivery drivers for Select One during the past three years" and did not receive minimum wage. [*Id.* ¶¶ 33, 39-40; Dkt. 18.]

Defendants have moved to dismiss Brown's complaint in its entirety. Defendants argue Brown has failed to allege an FLSA claim because has not demonstrated how his independent contractor status is erroneous. Defendants also contend that he cannot bring an IWPCA because he is not an Illinois resident, and that Illinois does not recognize unjust enrichment as an independent tort. Additionally, Defendants contend Defendant Georgievski cannot be liable under the FLSA or IWPCA because he is not an employer. [Dkt. 13.]

3

## II. Motion to Dismiss

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826-27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). A plaintiff's claim must be "plausible, rather than merely speculative," which requires a plaintiff to allege "just enough details about the subject matter of the case to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570-71 (7th Cir. 2023) (cleaned up). "If the complaint is plausible, the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Brant v. Schneider, Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022).

### A. Sufficiency of Brown's FLSA Allegations

To state an FLSA claim, a plaintiff must allege that he was engaged in commerce, that he did not receive the federally mandated minimum wage for at least one week, and that he was an "employee"; independent contractors cannot avail themselves of the FLSA. *Brant*, 43 F.4th 656 at 664; *Simpkins v. DuPage Housing Authority*, 893 F.3d 962, 964 (7th Cir. 2018). Defendants take issue with this last

4

requirement, arguing Brown has failed to allege facts which permit the inference he was an employee. [Dkt. 13 at 4-6.][1]

To determine whether an individual qualifies as an employee, courts look to the "totality of the circumstances, with the ultimate goal of determining the 'economic reality of the working relationship.'" *Simpkins*, 893 F.3d 962, at 964 (quoting *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992)). An employee-employer relationship exists where the employee is "dependent upon the business to which they render service." *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Courts construe this term "expansively", *Simpkins*, 893 F.3d 962, at 964, and the fact that an individual signed an agreement characterizing themselves as an independent contractor is not conclusive. *Brant*, 43 F.4th 656, at 665 ("[i]t is well established … that the terms of a contract do not control the employer-employee issue under the" FLSA); *Arunin v. Oasis Chicago Inc.*, 2016 WL 851989, at *3 (N.D. Ill. Mar. 4, 2016) ("the fact that Butterfly had drivers sign independent contractor profiles is not dispositive of their [employee] status.")

The Seventh Circuit has identified six factors to aid in this analysis: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business." *Lauritzen*, 835 F.2d 1529, at 1535 (7th Cir. 1987).

While helpful, these factors are non-exclusive and non-dispositive. The salient inquiry is whether the nature of the economic relationship between the alleged employee and employer is one of control. *Simpkins*, 893 F.3d 962, at 964-65 ("the *Lauritzen* factors are not the exclusive means by which the ultimate determination can be made … the inquiry is aimed at determining the economic reality of the working relationship by examining the totality of the circumstances"); *Brant*, 43 F.4th 656 at 672 ("the *Lauritzen* factors … seek to gauge whether Brant was sufficiently controlled by and dependent upon Schneider to come within the protection of the FLSA as an employee.")

Defendants argue Brown has failed to properly plead he was an employee because he has not alleged facts satisfying each of the *Lauritzen* factors. [Dkt. 13 at 4-5.] More specifically, Defendants contend Brown has not alleged facts regarding his opportunity for profit or loss, his investment in equipment, whether specialized skills are required, or whether his services were integral to Select One's business, and instead focuses on satisfying the IWPCA's employee test. [*Id.*]

The Court disagrees. A plaintiff need not satisfy every one of the *Lauritzen* factors to establish they are an employee under the FLSA, particularly at the pleading stage. *Simpkins*, 893 F.3d 962, at 964-65; *Brant*, 43 F.4th 656 at 672. Rather, they are guidelines to help the Court analyze the "economic reality of the working

6

relationship" regarding control. *Id.* As noted above, Brown alleges the following facts that illustrate his working relationship with Select One: (i) Brown was required to lease his trailer and truck from Select One, which had Select One insignia, and maintenance for these vehicles had to be performed at Select One locations; (ii) Brown worked up to 70 hours per week for Select One, and did not have any other employment during this time; (iii) Select One instructed Brown on which loads to take, when to pick them up, where to take them, what route to take, and when they needed to be delivered; (iv) Select One tracked Brown using GPS during his deliveries; (v) Brown needed to abide by a variety of Select One policies; (vi) Brown needed to inform Select One in advance if he intended to take time off; (vii) Brown was not permitted to procure his own customers; all business had to come from Select One; and (viii) Brown could not receive payment for any deliveries beyond what he received from Select One.

The Court has little trouble concluding Brown has satisfied his pleading burden. These allegations are sufficient to infer Select One exercises significant control over Brown in various material ways, including by dictating nearly every aspect of how Brown makes his deliveries, limiting his business opportunities to those provided by Select One, and demanding Brown use Select One equipment. This alone suggests Brown was economically dependent on Select One. *Lauritzen*, 835 F.2d 1529, at 1534.

A cursory review of the remaining *Lauritzen* factors confirms this result. Based on the Complaint's allegations, Brown had little opportunity to increase his profit

based on his managerial skills because Select One told Brown which loads he had to take, how and when he had to transport them, and stopped Brown from taking loads not authorized by Select One. And while Brown invested in equipment, Select One required him to lease their truck and trailer. Beyond his skill in driving large vehicles, Brown did not bring any unique skills to Select One, and his two-plus years driving for Select One supports the existence of an employee relationship. Finally, it cannot be disputed that making deliveries is "an integral part of" Select One's business—it is their business. *Lauritzen*, 835 F.2d 1529, at 1535.

Put simply, Brown's allegations are enough to show he is "dependent upon the business to which [he] render[ed] service", which would render him an employee under the FLSA. *Id.* at 1534. This Court is not alone in reaching this conclusion; many other cases in this district have allowed delivery drivers to bring FLSA claims. *Latipov v. AN Enterprise, Inc.*, (N.D. Ill. Feb. 7, 2024) (finding delivery driver adequately alleged employee status under the FLSA despite signing independent contractor agreements where employer controlled several aspects of plaintiff's employment); *Arunin*, 2016 WL 851989 (same); *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 2013 WL 5304100 (N.D. Ill. Sept. 19, 2013) (same); *see also e.g., Spates v. Roadrunner Transportation Systems, Inc.*, 2016 WL 7426134 (N.D. Ill. Dec. 23, 2016).

The only other argument Defendants make is that the contract Brown signed with Select One classifying him as an independent contractor should be given deference. [Dkt. 13 at 5-6.] But as explained above, the realities of Brown's employment trump the language of an agreement, and the realities here (taking the

8

allegations as true) show Brown alleged he was an employee. *Brant*, 43 F.4th 656, at 665; *Arunin*, 2016 WL 851989, at *3. Accordingly, Defendants' motion to dismiss Brown's FLSA claim on the basis he is not pled he is an employee is denied.

## B. Extraterritoriality of IWPCA

Brown alleges Defendants violated the IWPCA in two ways: they improperly deducted his wages and refused to reimburse him for work-related expenses. 820 ILL. COMP. STAT. 115/9; 820 ILL. COMP. STAT. 115/9.5. Brown contends Select One's deductions from his paychecks for fuel, highway taxes, GPS, and equipment rental, as well as refusing to reimburse him for cell phone payments and certain maintenance costs are unlawful because he is an employee, not an independent contractor. [Dkt. 1 at 9-10.] Defendants argue Brown's IWPCA claims should be dismissed because he is not an Illinois resident. [Dkt. 13 at 9-12.]

The IWPCA states it "applies to all employers and employees in" Illinois. 820 ILL. COMP. STAT. 115/1. The Seventh Circuit has interpreted this language to mean the IWPCA's "evident purpose is to protect employees *in Illinois* from being stiffed by their employers" and that the statute does not have an "extraterritorial reach" to nonresident employees. *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (emphasis in original); *see also Cline v. FitzMark Chicago, Inc.*, 2023 WL 2711615 (N.D. Ill. Mar. 30, 2023) (dismissing IWPCA claim where plaintiff was an Indiana resident who performed all his work from home). This is true even if the employer's principal place of business is Illinois. *Id.*

After *Glass*, however, the Seventh Circuit clarified that a nonresident employee can bring an IWPCA claim so long as they performed work in Illinois.

9

*Adams v. Catrambone*, 359 F.3d 858, 864 (7th Cir. 2004) ("nonresidents of Illinois who work in that state for an in-state employer may qualify as employees within the protection of the [IWPCA]"); *Traut v. AND Agency, LLC*, 2024 WL 1300923, at *4-5 (N.D. Ill. Mar. 27, 2024) (allowing Wisconsin resident to pursue an IWPCA claim where resident performed work in Illinois). "No court of binding authority has set forth a minimum quantum of work in Illinois to qualify as an employee under the" IWPCA, *Yata v. BDJ Trucking Co.*, 2018 WL 3303290, at *5 (N.D. Ill. July 5, 2018), but "at the pleading stage, plaintiffs 'need only plead that they have done *some* work for an Illinois employer while physically present in Illinois.'" *Piquion v. Amerifreight Systems LLC*, 2023 WL 8113379, at *18 (N.D. Ill. Nov. 22, 2023) (quoting *Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *3 (N.D. Ill. Jan. 11, 2022)) (emphasis in original).

Here, Brown alleges that he picked up loads in Illinois, delivered loads in Illinois, and received maintenance work for his truck in Illinois. [Dkt. 1 ¶¶ 13, 25-26.] Courts routinely find allegations of this type sufficient to survive a motion to dismiss, including in the delivery driver context. *See e.g., Piquion*, 2023 WL 8113379; *Niiranen*, 2022 WL 103722; *Yata*, 2018 WL 3303290. The Court agrees Brown has satisfied his pleading burden by alleging some of his work was performed in Illinois.

Defendants' arguments to the contrary are unavailing. First, Defendants point to *Glass*, and cases decided after *Glass* but before *Adams*, to argue Brown's nonresident status alone precludes the applicability of the IWPCA. [Dkt. 13 at 11-12.] But *Adams*, which Defendants ignore in their briefing, makes clear that

10

"nonresidents of Illinois *who work in that state* for an in-state employer may qualify as employees within the protection of the [IWPCA]." *Adams*, 359 F.3d 858 at 864 (emphasis added). And the fact that Brown alleges he performed some work in Illinois differentiates this case from *Glass* and *Cline*, where those plaintiffs lacked such allegations.

Defendants also argue that Brown must do more than allege he performed "any work in Illinois for an Illinois employer", but that some substantial portion of the employee's work must have been done in Illinois. [Dkt. 13 at 11 (*quoting Vendetti v. Compass Envtl., Inc.*, 2006 WL 3694852, at *2 (N.D. Ill. Dec. 14, 2006)). While the Court acknowledges the amount of work Brown performed in Illinois may ultimately be relevant to his IWPCA claim, it is not at the pleading stage. *See Piquion*, 2023 WL 8113379, at *19 ("[i]f Plaintiffs did not perform enough work in Illinois to recover under the IWPCA, that is an argument more fitting for a summary-judgment motion"); *Niiranen*, 2022 WL 103722, at *3 ("[a]rguments about whether *enough* work was performed in Illinois are more appropriately raised at the summary judgment stage") (emphasis in original); *Cohan v. Medline Industries, Inc.*, 170 F. Supp. 3d 1162, 1175 (N.D. Ill. 2016) (granting summary judgment to defendant on nonresident plaintiff's IWPCA claim where he failed to show he performed enough work in Illinois). Accordingly, Brown has adequately alleged an IWPCA claim, and Defendants' motion to dismiss is denied.[2]

---

[2] In so ruling, the Court notes it is not relying on *Watts*, an Illinois state court appellate opinion that suggests IWPCA may apply to fully remote workers. *Watts v. ADDO Mgmt., LLC*, 97 N.E.3d 75, 82 (Ill. App. Ct. 2018) ("it is clear that the [IWPCA's] application is not

### C. Whether Georgievski is an Employer under FLSA or IWPCA

Defendants have also moved to dismiss Brown's claims against Defendant Georgievski on the basis Brown has failed to allege Georgievski qualifies as an "employer" under either statute. [Dkt. 13 at 6-9.]

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Seventh Circuit has instructed one is an employer if they exercised "supervisory authority over the complaining employee and was responsible in whole or part for the alleged [FLSA] violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 697 (N.D. Ill. 2015); *Dawkins v. NR 1 Transport, Inc.*, 2021 WL 4125086, at *4 (N.D. Ill. Sept. 8, 2021). Other relevant, but non-dispositive factors include whether the purported employer had the authority to hire or fire the employee, controlled the employee's hours or employment conditions, determined the rate and method of the employee's payment, and maintained employment records. *Schneider*, 148 F.Supp.3d 690, at 697-98. As with determining who is an employee, courts should interpret employer "expansively" and review the full context of the relationship. *Simpkins*, 893 F.3d 962, at 964; *Schneider*, 148 F.Supp.3d 690, at 698.

---

limited to any specific quantum of work performed in Illinois but, in fact, may apply in certain circumstances even where all of the work is performed outside of this state."). District courts are obligated to follow Seventh Circuit precedent that conflicts with state appellate decisions. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). *Watts* conflicts with *Glass*'s holding that the IWPCA does not apply to purely remote workers, so the Court follows *Glass*.

The IWPCA defines employer as follows: "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act." 820 ILL. COMP. STAT. 115/13; *Andrews v. Koha Printing Corp.*, 838 N.E.2d 894, 899-900 (Ill. 2005) ("personal [IWPCA] liability [is reserved] for those individual decision makers who knowingly permitted the Wage Act violations.") Accordingly, if an "individual was in a position to 'knowingly permit' the employer to violate the statute", then that individual is an employer under the IWPCA. *Zwick v. Inteliquent, Inc.*, 83 F. Supp. 3d 804, 812 (N.D. Ill. 2015). In this context, "knowingly permit" is broadly construed to include advising, consulting, affecting, or consenting. *Id.*

Brown has alleged enough to satisfy both definitions. Brown asserts Georgievski is a "Manager" of Select One who "possesses and exercises the authority to make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them." [Dkt. 1 ¶ 7.] He also contends Georgievski "create[ed] and oversee[s] Select One's unlawful classification and compensation practices."[3] [*Id.* ¶ 1.] In sum, Brown alleges Georgievski oversees drivers like him, and is directly responsible for the policies leading to the statutory violations. Nothing more is required.[4] *Noe v. Smart Mortgage*

---

[3] These allegations clearly imply Georgievski knew of the IWPCA violations, the sole argument Defendants make as to why Brown has failed to meet his burden on this claim. [Dkt. 13 at 9.]

[4] The cases Defendants rely on to argue Brown has not met his pleading burden were not decided on the pleadings. [Dkt. 13 at 8 (citing *Schneider*, 148 F. Supp. 3d 690 (bench trial); *Lee v. BK Schaumburg Inc.*, 2020 WL 3577994 (N.D. Ill. July 1, 2020) (summary judgment)).

13

*Centers, Inc.*, 2022 WL 846183, at *4 (N.D. Ill. Mar. 22, 2022) (allowing FLSA claim to proceed against individual employers where allegations showed they "exercised their authority in such a way as to have caused the FLSA violations"); *Zwick*, 83 F. Supp. 3d. 804, at 812 (IWPCA claim stated against individual employers where plaintiff alleged defendant "had direct responsibility" for statutory violation).

Defendants' motion to dismiss the FLSA and IWPCA claims against Defendant Georgievski is therefore denied.

### D. Unjust Enrichment

Finally, Defendants argue Brown's unjust enrichment claim should be dismissed because Illinois does not recognize unjust enrichment as a distinct cause of action and because the parties have a valid contract governing Brown's relationship with Select One. [Dkt. 13 at 12-13.] The basis for Brown's unjust enrichment claim is the same as the IWPCA claims: Select One was unjustly enriched by recouping work-related deductions and expenses from Brown that Select One should have borne. [Dkt. 1 at 11.]

Defendants are correct that unjust enrichment "is not a separate cause of action" in Illinois, but "a condition brought about by fraud or other unlawful conduct" that "is tied to the fate" of another claim. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740-41 (7th Cir. 2019). Here, the unjust enrichment claim is tied to the IWPCA claims—all relate to Select One's alleged improper imposition of deductions and expenses on Brown. And because "the statutory claim[s] may move forward … that revives the request for restitution based on unjust enrichment." *Id.* at 741.

Defendants' contract argument fails because the Court has not determined the parties have a valid and enforceable contract as it relates to the relevant issue. Whether Brown is an independent contractor still needs to be decided, and that determination will inform whether the deductions were improper and Select One was unjustly enriched. *See Util. Audit Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) ("When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment *unless the claim falls outside the contract*.") (emphasis added). Accordingly, the Court will allow Brown's unjust enrichment claim to proceed along with the rest of Brown's claims.

### III. Motion for Conditional Certification

Next, the Court turns to Brown's motion for conditional certification of an opt-in collective pursuant to 29 U.S.C. § 216(b) for his FLSA claim. [Dkt. 18.] Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a 'collective action on behalf of themselves and other 'similarly situated' employees." *Latipov v. AN Enter., Inc.*, 2024 WL 474166, at *5 (*quoting Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010)). Courts in this district employ a two-step process in collective actions. Relevant here, the first step is the "conditional certification stage."[5] *Id.*

At the conditional certification stage, all Brown needs to show is "that there are similarly situated employees who are potential claimants." *Latipov*, 2024 WL

---

[5] The second step occurs after the parties have taken discovery, where a defendant may ask the Court to reexamine whether there is "sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008)

15

474166, at *5. This burden is "modest" and can be satisfied by showing a plaintiff and others were "victims of a common policy or plan that violated the law." *Russell*, 575 F. Supp. 2d. 930, at 933; *see also Latipov*, 2024 WL 474166, at *5 (courts give a "lenient interpretation" to "similarly situated"). If the Court can "envision a scenario" where Brown is "similarly situated" to other potential claimants, the motion will be granted. *Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 989 (N.D. Ill. 2018).

Brown argues that other Select One drivers were subject to the same independent contractor mischaracterization, and the same resulting unlawful payment practices. [Dkt. 18 at 2; *see also id.* at 5.] He therefore seeks to certify a collective of "all delivery drivers who worked for Select One in the United States between April 2021 and the present and were classified as independent contractors." [*Id.* at 2.]

In support of his motion, Brown attaches a declaration where he attests based on personal knowledge that "other delivery drivers working for Select One were also classified as independent contractors, were subject to the same rules and requirements for deliveries, were paid based on a percentage of the load, and were subject to various deductions during their time working for Select One." [Dkt. 18-3 ¶ 16.] Brown also points to portions of Select One's website, which recruits prospective drivers to work for Select One by touting some of the practices Brown alleges he was subjected to. [Dkt. 18-4.]

16

The Court concludes Brown has satisfied his "modest" burden of showing that other delivery drivers were "victims of a common policy or plan that violated the law." *Russell*, 575 F. Supp. 2d. 930, at 933. The Court is far from alone in conditionally certifying collectives of delivery drivers based on similar allegations. *See e.g., Latipov*, 2024 WL 474166; *Brown*, 2013 WL 5304100; *Williams v. TopHat Logistical Solutions, LLC*, -- F. Supp. 3d --, 2023 WL 8190366 (N.D. Ill. Nov. 27, 2023); *Souran v. GrubHub Holdings, Inc.*, 2017 WL 11594472, at *4 (N.D. Ill. Feb. 3, 2017).

In opposing the motion, Defendants ask the Court to eschew the conditional certification process, and instead employ procedures followed by other Circuits which would require the parties to first take discovery to determine who may be "similarly situated" before providing those individuals with notice. [Dkt. 23 at 4-5.] But this process would only exacerbate the statute of limitations concerns the Court raised previously. [*See* Dkt. 16.]

## IV. Conclusion

Defendants' motion to dismiss is denied, and Brown's motion for conditional certification is granted.

Enter: 24 CV 0903
Date: July 12, 2024

_____
Lindsay C. Jenkins
United States District Judge